Filed 6/13/24  In re Samantha C. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re SAMANTHA C. et al., Persons Coming Under the Juvenile Court Law. | B326494 (Los Angeles County Super. Ct. Nos. 22CCJP04569A-E) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. LUCIA M., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Lisa A. Brackelmanns, Judge. Affirmed.

Liana Serobian, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Jane Kwon, Principal Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \*

Lucia M. (mother) challenges the juvenile court's assertion of dependency jurisdiction over five of her children as well as the court's order removing the children from her custody. Mother's challenge to the jurisdictional findings is not justiciable, and her challenge to the removal order is moot. We accordingly affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I. The Family

Mother has eight children—seven with Gerardo C. (ex-husband), and her youngest child with Albert H. (father). This case involves the five youngest children—namely, (1) Samantha C. (born July 2005), (2) Ruby C. (born January 2007), (3) Jessica C. (born January 2008), (4) Katelynn C. (born September 2011), and (5) Stephanie H. (born December 2013).

### II. Domestic Violence Incident

In September 2022, father and mother started yelling at each other outside of a relative's home. Father did not want mother to leave, so he disabled the battery in her car. When father started to become aggressive toward mother, Paola—one of mother's now-adult children—interposed herself between father

2

and mother. Father yanked a pair of glasses off Paola's face, told her that he was "going to hurt [her]," and then crushed her glasses in his palm. When Samantha then got between mother and father and pushed him back from mother, father screamed at her not to "fucken [*sic*] touch [him]" and then punched Samantha with a closed fist in the forehead. Then he punched mother on the left side of her ear. Although mother reported father's conduct to the responding police, she later denied that father had engaged in any of this conduct, reported that *Samantha* had been the sole instigator and combatant, and dismissed all prior reports that the incident happened as "dumb" and "ridiculous."

This was not mother and father's first incident of domestic violence, as they had yelled at each other and pushed each other on prior occasions.

## III. The Juvenile Court's Assertion of Jurisdiction

On November 18, 2022, the Los Angeles Department of Children and Family Services (the Department) filed a petition alleging that mother and father had a "history of engaging in violent verbal and physical altercations in the children's home," including the September 2022 incident and prior incidents, and further alleged that father's "violent conduct" and "mother's failure to protect the children endangers the children's physical health and safety . . . and places the children at risk of serious physical harm, damage, danger and failure to protect." The petition alleged that jurisdiction was appropriate under subdivisions (a) and (b)(1) of section 300 of the Welfare and Institutions Code.[1]

---

1      All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

On January 19, 2023, the juvenile court sustained the petition in full as to mother.[2] That same day, the juvenile court removed the children from mother's custody, placing the elder four children with ex-husband and placing Stephanie in foster care.

## IV.   Mother Appeals

Mother filed this timely appeal to the jurisdictional and dispositional order.

## V.   Post-Appeal Events[3]

On July 20, 2023, the juvenile court terminated its dependency jurisdiction over Samantha because she turned 18 years old, and was no longer a minor subject to the court's jurisdiction.

On January 25, 2024, the juvenile court terminated jurisdiction over the remaining children and subsequently issued an exit order that placed no restrictions on the custody of those children, leaving it to the parents to decide a custody arrangement.

## DISCUSSION

In her appeal, mother raises two challenges.

First, mother argues that the juvenile court's finding that dependency jurisdiction is appropriate under subdivision (a) of section 300 is not supported by substantial evidence. This

---

[2] Father entered a no-contest plea as to the allegation under subdivision (b)(1) of section 300, so the subdivision (a) allegation was dismissed.

[3] While we grant the Department's request to take judicial notice of these court records (Evid. Code, §§ 452, 459), we deny its motion to dismiss this appeal on the basis of the post-appeal events documented in those records.

4

challenge is not justiciable.  Where, as here, dependency jurisdiction over a child rests on several grounds, jurisdiction is valid if *any* ground is valid.  (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.)  Because mother does not challenge the juvenile court's assertion of jurisdiction under subdivision (b)(1) of section 300, and because the assertion of jurisdiction under that subdivision rests on the identical factual allegations as to the assertion of jurisdiction under subdivision (a), any ruling we would make on the propriety of dependency jurisdiction under subdivision (a) would have no effect whatsoever on the validity of the juvenile court's assertion of dependency jurisdiction over the children.  Mother urges that her challenge to the jurisdictional finding under subdivision (a) is still viable because that finding might obligate the Department to file a report with the Child Abuse Central Index (the Index), but that such an obligation would *not* exist if the sole basis for jurisdiction was subdivision (b)(1).  We reject this argument.  The Index is meant to include conduct constituting "child abuse" or "severe neglect" as those terms are defined by the Child Abuse and Neglect Reporting Act. (Pen. Code, §§ 11165.2, 11165.6.)  Those definitions include conduct that falls under *both* subdivision (a) and subdivision (b) of section 300; consequently, mother has not shown how a decision by this court overturning the juvenile court's section 300, subdivision (a), finding while leaving the subdivision (b)(1) finding intact—particularly when the factual allegations underlying both are identical—would affect her potential inclusion in the Index (and thus how it will have any consequence beyond jurisdiction in this case).  (Accord, *In re D.P.* (2023) 14 Cal.5th 266, 280-282 (*D.P.*) [ruling that potential inclusion in the Index was "too speculative" to avoid mootness].)

Second, mother argues that the juvenile court's removal order is invalid because the court did not consider alternatives short of removal. This challenge is now moot. A case becomes moot when subsequent events render it impossible for the court to grant any effective relief. (*D.P.*, *supra*, 14 Cal.5th at p. 276.) Here, the juvenile court terminated dependency jurisdiction over all five children and imposed no further restrictions on the children's placement. As a result, the juvenile court's termination order completely negated its earlier removal order. Thus, we can grant mother no relief regarding that removal order which the juvenile court has not already granted.

## DISPOSITION

The juvenile court's jurisdictional and dispositional orders are affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
HOFFSTADT


We concur:


_____, P. J.
LUI


_____, J.
ASHMANN-GERST

6